UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**

MAY 10 2005

CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|--|--|--|
| UNITED STATES OF AMERICA, | \* | CR. 04-40126 |
| | \* | |
| Plaintiff, | \* | |
| | \* | |
| vs. | \* | REPORT and RECOMMENDATION |
| | \* | (Motion to Suppress) |
| | \* | |
| MARK BLOCK and | \* | |
| ROBERT LAYNE BELT a/k/a "Bitchin Bob," | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending are Defendant Belt's Motion to Suppress Statements (Doc.64) and Motion to Suppress Search Warrant (Doc. 65). A hearing was held on Monday. April 25, 2005. Defendant Belt was personally present and represented by his counsel of record, Assistant Federal Public Defender William Delaney, III. Defendant Block was personally present and represented by his counsel of record, Mr. Brian Kirby. The Government was represented by Assistant United States Attorney Mr. John Haak. South Dakota Department of Criminal Investigation (DCI) Agent Jason Even testified at the hearing, and two exhibits were received into evidence. Additionally, the parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress Statements (Doc. 64) be **GRANTED** and Motion to Suppress Search Warrant (Doc. 65) be **DENIED.**

## JURISDICTION

Defendants are charged in an Indictment with Conspiracy to Possess with Intent to Distribute and Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. The pending Motions to Suppress were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated February 1, 2002.

## FACTUAL BACKGROUND

South Dakota DCI Agent Jason Even was involved in a drug investigation in October, 2004. Agent Even works for a state law enforcement agency, and had not, at the time in question, involved any federal law enforcement personnel in his investigation of the Defendants. TR 13.[1] In the course of the investigation, Agent Even drafted an Affidavit in Support of Search Warrant and a proposed Search Warrant for the trailer home occupied by Defendant Belt. TR 9, EX A. Agent Even presented both documents to state Circuit Court Judge Rodney Steele for his approval, and Judge Steele authorized the warrant on October 19, 2004. EX A, TR 10-11.

The Affidavit in Support of Search Warrant contained blanks that Agent Even could initial to request special permission pursuant to South Dakota law for a nighttime search (SDCL 23A-35-4) and a no-knock search (SDCL 23A-35-9). Agent Even knew that a nighttime search warrant needed to be specifically authorized by a judge. TR 21. Agent Even initialed the blank in the Affidavit requesting a no -knock warrant. EX A. Judge Steele authorized the no-knock warrant by initialing a similar blank on the warrant itself. TR 11-12, EX A. Agent Even did not initial the blank requesting a nighttime search because of an "oversight" based in part on his erroneous assumption that authorization for a no-knock warrant allowed a search at any time, day or night. TR 16-17. Judge Steele, therefore, did not specifically authorize a nighttime search as required by South Dakota law (SDCL 23A-35-4). TR 12.

Agent Even advised Judge Steele the warrant would not be executed immediately. TR 27. The next evening (on October 20) at approximately 10:00 p.m. Agent Even gathered local and state law enforcement officials for a briefing at the DCI office before the warrant was executed. TR 16. Officers from the DCI, the Brookings Police Department, the Bookings County Sheriff's Office, and the South Dakota State Police Department participated in the briefing. TR 15. The warrant was executed shortly after midnight (12:00 a.m.) on October 21. TR 16. At the time the warrant was executed, Agent Even did not realize he did not have judicial authorization for a nighttime warrant. TR 16.

---

[1]He accessed the FBI database, through the Brookings Police dispatch, to run a "Triple I" report (EX B) but that did not involve any contact with federal law enforcement personnel. TR 39.

Agent Even explained the warrant was executed at night because the previous controlled buys had occurred at night (TR 41), and for safety reasons ( TR 23).  Safety concerns were in his mind when he prepared the Affidavit. TR 24, 40.  Some of Agent Even's safety concerns included information he had received regarding "bug" detectors, surveillance equipment, and a firearm that had been observed on the property by a confidential informant. TR 40, EX A. Some of the specific concerns Agent Even expressed in the Affidavit were:

- "BELT is a constant user of methamphetamine . . .I know that people under the influence of methamphetamine have exhibited severe mood swings and are sometimes very violent when confronted by stressful situations.  I also know that paranoia is frequently present with individuals that use and distribute methamphetamine." (EX A, Aff. ¶ 7)

- "The CI provided information that BELT has taken measures in the past to try an (sic) avoid detection when it comes to selling drugs. The CI indicated that the CI has known BELT to have had a surveillance camera set up at one time as a way to see who is coming to his residence. The CI also indicated that BELT was supposed to have some sort of "open line" detector that was supposed to show when there was an open line (or wire) inside of BELT's trailer. The CI indicated that the CI did not see either of the items mentioned for some time." (EX A, Aff. ¶ 8)

- ". . . The CI indicated that from this desk BELT is able to monitor vehicle traffic coming into the trailer park." (EX A, Aff. ¶ 9)

- "I would refer to the presence of a gun that was observed by the CI during the purchase of crystal methamphetamine on 10-9-04. It is unknown at this time whether the gun is real but law enforcement must treat it as if the gun is real.  I would also again mention the information that has been presented about the use of surveillance cameras and wire detectors. That information would show that BELT is concerned about who is coming and going from his residence. The fact that the CI indicated that the CI has not seen both devices in some time does not mean that secondary devices are not being utilized.  I would also say that there is no way to know that BELT did not recently reactivate those devices due to his paranoia .  I would also bring attention to the fact that, according to the CI, and indicated to on the three nights that the CI purchased methamphetamine from BELT that BELT spends the majority of his time at the computer

desk where the drugs are located and next to where the gun was last seen. I know that in situations where drug users and distributors are given an appropriate amount of time to answer the door after learning that the cops are there with a search warrant that situation (sic) can result in which evidence is destroyed and access to weapons is made available. I would request that the no-knock provision be issued as an officer safety concern and to avoid the destruction of evidentiary items." (EX A, Aff. ¶ 10)

The day after the search warrant was executed, Agent Even contacted federal DEA authorities, because approximately four ounces of methamphetamine was seized during the search. TR 30-31. Agent Even explained that if more than two ounces are seized, the case is suitable for presentation to the DEA for possible federal prosecution. TR 13-14.

### DISCUSSION

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence, United States v. Phillips, 540 F.2d 319 (8th Cir.1976) cert. denied, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976), but on the government to justify a warrantless search or seizure. United States v. Bruton, 647 F.2d 818 (8th Cir.1981) cert. denied, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981). The standard of proof is a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### Motion to Suppress Statements (Doc. 64)

At the beginning of the suppression hearing, counsel for the Government represented that no Miranda warnings were given to the Defendants, but that no statements were taken or given, and the Government does not intend to offer any of the Defendants' statements at trial. TR 5-6. It is respectfully recommended, therefore, that the Motion to Suppress Statements be **GRANTED**.

### Motion to Suppress Search Warrant (Doc. 65)

South Dakota law requires special judicial permission to execute a search warrant at night. In a federal prosecution, however, "we evaluate a challenge to a search conducted by state authorities under federal Fourth Amendment standards." United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994) cert. den. 513 U.S. 878, 115 S.Ct. 208, 130 L.Ed.2d 138 (1994). Further, "a court must examine the legality of a search by state officers as if made by federal officers . . . evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution

because *state* law was violated." Id. (emphasis in original). The ultimate question, therefore, is whether the search was reasonable, measured by Fourth Amendment standards.

In a similar case similar to this one, the Eighth Circuit explained "no federal interest is compromised by denying the motion to suppress because the nighttime search was clearly valid under federal law. *See* 21 U.S.C. § 879 (drug trafficking search warrant may be served at any time of the day or night). . ." See United States v. Applequist, 145 F.3d 976, 978 (8ᵗʰ Cir. 1998). In other words, the Eighth Circuit has clearly articulated the Fourth Amendment reasonableness analysis regarding nighttime searches includes consideration of § 879. In Gooding v. United States, 416 U.S. 430, 458, 94 S.Ct. 1780, 1794, 40 L.Ed.2d (1974) the United States Supreme Court explained that a nighttime search under § 879 "requires no special showing . . . other than a showing that the contraband is likely to be on the property or person to be searched at the time." Id.

The Eighth Circuit explained the interplay between the Fourth Amendment reasonableness analysis and § 879 in United States v. Keene, 915 F.2d 1164, 1168 (8ᵗʰ Cir. 1990) cert. den. 498 U.S. 1102, 115 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). There the search was conducted pursuant to a state warrant by state authorities. The Court noted the defendant "does not dispute the district court's finding of probable cause to search his house. Rather, [defendant] asserts there was no probable cause to search his house at night in violation of the common law prohibition against nighttime searches." The Court relied on § 879 and Gooding as authority for a nighttime search based on probable cause, without more, noting "the government argues correctly . . that § 879 [has] never been held to be unconstitutional . . .the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." Id. The Eighth Circuit affirmed the district court's denial of the motion to suppress in part "because the warrant was executed in compliance with 21 U.S.C. § 879 . . ." See also United States v. Ferguson, 35 Fed. Appx. 282 (8ᵗʰ Cir. 2002) (unpublished, copy attached)[2] "Ferguson may be correct in asserting that the nighttime search of his home violated Arkansas law.

---

[2]Pursuant to Fed. R. App. Proc. 28A(l), unpublished opinions have no precedential value in the Eighth Circuit. The Ferguson case is cited here because of the similarity of the arguments to this case.

However, when evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to state statute, but rather is resolved by Fourth Amendment analysis. Although a nighttime search can be particularly intrusive, a search is not unconstitutional simply because it is conducted at night. Moreover, a nighttime search conducted by state law enforcement officers does not offend any federal interests when it is clearly valid under federal law. The nighttime search of Ferguson's home did not violate federal law, which allows a nighttime search if the judge who issues the warrant has probable cause to believe drugs will be on the property when it is searched. See 21 U.S.C. § 879." Id. (citations omitted).

In this case, no federal interest was violated by the night time search. The Fourth Amendment is not offended, because the warrant would have been clearly valid under federal law pursuant to 21 U.S.C. § 879. (There was sufficient probable cause to believe controlled substances would be found on the property to be searched). Section 879 aside, the night time search was reasonable in this instance and therefore passes constitutional muster in any event. See United States v. Tucker, 313 F.3d 1259 (10th Cir. 2002) (night search reasonable under Fourth Amendment because controlled substances were involved and "there was evidence to support . . . finding that the officers decided to execute the search warrant when they did in order to reduce the danger to the occupants, themselves, and others in the vicinity."). Agent Even testified he requested and was granted a "no-knock" warrant for safety reasons. Those same reasons (the Defendant's paranoia, his access to a firearm, and his ability to see and monitor all incoming traffic from the trailer park and his own residence) support the reasonableness of executing the warrant in the cover of darkness. See also United States v. Kingsley, 1998 WL 295577 (D. Kansas)(citation omitted) (affirming as reasonable the use of "flash-bang" devices during a search, and noting , "the court must determine whether the police officers actions were objectively reasonable in light of the facts and circumstances confronting them.").

## CONCLUSION

The Government stated it did not *Mirandize* the Defendants, but does not intend to offer any statements against them. Because this is a federal prosecution, validity of the warrant to search Mr. Belt's home must be measured not by whether state law was violated, but by the reasonableness

standard of the Fourth Amendment. The search was not unconstitutional merely because it was conducted at night; it was a night time search conducted by state officers and did not offend any federal interest because it was clearly valid under federal law. This night time search was reasonable and thus did not violate any federal interest or the Fourth Amendment, because Judge Steele had probable cause to believe drugs would be on the property when searched, and because Agent Even sufficiently articulated legitimate safety concerns. For these reasons, it is respectfully recommended to the District Court that Defendant's Motion to Suppress Statements (Doc. 64) be **GRANTED** and that his Motion to Suppress Search Warrant (Doc. 65) be **DENIED.**

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this _10th_ day of May, 2005.

BY THE COURT:

John Simko
John E. Simko, United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By _____, Deputy
(SEAL)

-7-